UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REMARK LLC,

                Plaintiff,                    Case No. 10-12767
                                                HON. GEORGE CARAM STEEH

vs.

ADELL BROADCASTING,

                Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION

Plaintiff, Remark, LLC (Remark) brings this  action pursuant to the Copyright Act,17 U.S.C. § 101 *et seq.* and the Lanham Act, 15 U.S.C. § 1125 *et seq.* against defendant, Adell Broadcasting Corporation d/b/a WADL-TV (Adell), for allegedly infringing upon Remark's copyrighted television commercials, which Remark refers to as its "Remarkable Mouth" or "Hot Lips" commercials and for causing confusion as to the source of Adell's commercials.    Plaintiff also asserts a state law claim for breach of contract.

### II.  FACTUAL BACKGROUND

Remark claims that  for over twenty-five (25) years it has produced the "Remarkable Mouth" or "Hot Lips" commercials, which began airing in southeast Michigan to promote Detroit area radio station, WRIF, in the late 1970s and continued  periodically through the late 1980s.  The  "Remarkable Mouth" commercial was registered with the United States

Copyright Office on April 11, 1980, U.S. Reg. No. PA 64-936 (Remarkable Mouth Registration).  The Remarkable Mouth Registration was assigned to Remark on August 12, 2002 and recorded in the U.S. Copyright Office on November 6, 2002.

The version of the Remarkable Mouth commercial that was registered with the U.S. Copyright Office was produced for WLUP radio station in Chicago, Illinois.  This version of the Remarkable Mouth commercial is based on preexisting material produced for radio stations KBPI and KOY.  Remark alleges that the Remarkable Mouth commercial "includes common expressive elements which are original and creative to Remark and which have become distinctive such that public, advertising professionals and/or broadcasters recognize Remark as the owner and source of the commercials."  Am. Compl., ¶ 8.  The original, expressive elements include:

> a body shot of an attractive woman wearing a tank top or T-shirt bearing a station logo; the woman speaks directly into the camera, in her own voice, to introduce the name of the station being promoted; the camera zooms into a closer shot of the woman's face, with emphasis on her mouth; the woman's voice changes to one not her own as she lip synchs to promote the broadcasting content of the subject station by repeating short segments of content familiar to that subject station; the camera withdraws back to a broader shot of the woman; a male voice over from off camera speaks to the woman "you have a remarkable mouth;" the woman responds, in her own voice, that the subject station is a remarkable station; camera again zooms in to focus on the woman's face where she again lip synchs a final short segment of the subject station's content followed by the subject station's logo or other branding.  The different Remarkable Mouth commercials are essentially similar with respect to their expressive elements.

Am. Compl., ¶9.

Remark alleges that employees of radio station WADL developed, produced and broadcast two commercials entitled 'Promo Girl' and 'Classic Comedy Block' both featuring women promoting WADL's broadcasting.   Remark argues that the WADL commercials

incorporate the Remarkable Mouth commercials' distinctive elements.   On August 12, 2009, Remark issued a demand letter to Adell describing WADL's unauthorized production and broadcast of two television commercials promoting the station, demanded that WADL cease and desist from using the commercials, as well as money damages, including compensation for the licensing fee Remark would have received if WADL had used Remark to produce the commercials.   See Plf.'s Mot. for Summ. J., Ex. A.   According to Remark, the parties engaged in extensive settlement discussions following the August 12, 2009 letter, and the parties orally agreed to enter into a settlement agreement whereby Adell would pay $50,000.00 to Remark in exchange for a release of all potential claims against Adell.   The agreement was reduced to a written document, first drafted by Remark but later rewritten by Adell.   On December 11, 2009, Adell's counsel wrote to Remark's counsel, Larry Stein, in an email correspondence:

> Larry,
>
> Attached is a redline version of our proposed revisions to the settlement agreement between CMI Films and WADL.  Please contact me to discuss at your convenience.
>
> Thanks,
>
> Robin Asher

Thereafter, on December 14, 2009, counsel for Remark responded:

> We've reviewed your proposed revisions.  Because we'd like to get this wrapped up, we will agree to all of your proposed changes.   Please incorporate them into a final version for execution.  As a reminder, payment is due to CMI within 7 business days of execution.  I will follow up with method and address, etc.  Thank you.
>
> Best,
>
> Larry

On December 22, 2009, counsel for Adell responded to Remark's December 14, 2009 email:

> Attached is a Final Version of the CMI v. WADL Settlement Agreement. Please have your clients execute the Agreement and return two originals to me for execution by WADL. Once the Agreement has been fully executed, we will return one of the original fully executed Agreements and arrange for payment of the settlement.

See Plf.'s Mot. for Summ. J., Ex. B. Remark signed the Settlement Agreement, and returned two copies on January 5, 2010. Counsel for Adell responded:

> I have received the agreements executed by your client and forwarded on to our client for signature this week. Please let me know as soon as possible who our client should make the check payable to?
>
> Thanks,
>
> Robin W. Asher

Id., Ex. D.

On January 19, 2010, Adell, through new counsel, indicated that $50,000.00 was simply an unreasonable amount and while Adell was interested in settlement, it would only agree to a reasonable amount commensurate with the facts. Id., Ex. E. This letter further disclaimed any infringement on the part of Adell because there was no substantial similarity between the WADL commercials and the protectable elements of Remark's work.

On July 13, 2010, Remark filed the instant action raising one count for copyright infringement. On August 4, 2010, Adell filed a motion to dismiss arguing that Remark's complaint failed to state a claim for copyright infringement under modern, federal pleading standards. Specifically, Adell argued that the complaint failed to (1) identify any original constituent elements of the derivative work of the Remarkable Mouth Registration, (2)

identify the accused commercials of Adell, and (3) explain how Adell allegedly copied the original work.  At a hearing on October 12, 2010, the court found that the complaint failed to meet the federal pleading standards set forth in <u>Bell Atlantic Corp</u>. v. <u>Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937 (2009), however the court permitted Remark an opportunity to amend the complaint to address these pleading deficiencies.  An order was entered on October 12, 2010 denying without prejudice Adell's motion to dismiss and requiring Remark to file an amended complaint on or before December 13, 2010.  <u>See</u> Dkt. No. 12.

On December 13, 2010, Remark filed a first amended complaint, which reformulated Remark's copyright infringement claim (count I), added a claim for trademark infringement (count II) and a claim for breach of settlement agreement (count III).  On December 27, 2010, Adell filed a motion to dismiss Remark's first amended complaint arguing that: (1) the reformulated copyright claim does not rectify the deficiencies found in the original pleading, (2) the claim for trademark infringement is prohibited in this circuit as a "backdoor" pleading of copyright infringement, and (3) there is no enforceable settlement agreement between the parties.  On January 24, 2011, Remark filed a motion for summary judgment on its claim for breach of the settlement agreement (count III).

## III.  ANALYSIS

A.  <u>Adell's Motion to Dismiss First Amended Complaint</u>[1]

i.  <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 555 (2007) (citing <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 47 (1957).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." <u>Ass'n of Cleveland Fire Fighters</u> <u>v.</u> <u>City of Cleveland</u>, 502 F.3d 545, 548 (6th Cir. 2007) (quoting <u>Bell Atlantic</u>, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u>  (citations and quotations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

---

[1]  Because the court concludes that summary judgment in favor of Remark on its breach of contract claim is appropriate as discussed below, the court will not address Adell's argument that this claim is subject to dismissal under Rule 12(b)(6).

to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Id. at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. Amini v. Oberlin College, 259 F. 3d 493, 502 (6th Cir. 2001).  Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Id.

### ii.   Count I: Copyright Infringement

Adell argues that Remark's allegations suffer from the same deficiencies as those in its original pleading, namely that Remark fails to identify any original content of its Remarkable Mouth commercials.  Adell also argues that Remark's contention that it owns "a collection of commercials known as the 'Remarkable Mouth' or 'Hot Lips' commercials" raises a nouveau and erroneous legal theory of copyright infringement based on "common expressive and distinctive elements" of an amalgam of commercials, registered *vel non*. Adell further asserts that any commercial developed after the creation of the Remarkable

Mouth commercial of registration number PA 64-936 in 1979 is a derivative work and in order to be protected it must be registered.   See Murray Hill Publ'ns, Inc. v. ABC Communications, Inc., 264 F. 3d 622, 632 (6th Cir. 2001).[2]

The Copyright Act provides protection for original works of authorship expressed in various media.   See 17 U.S.C. § § 101-1332.   The owner of a copyright has the exclusive right (1) to reproduce the copyrighted work; (2) to prepare derivative works; (3) to distribute copies; (4) to perform publicly a copyrighted work; and (5) to display publicly a copyrighted work.   See 17 U.S.C. § 106.   In order to state a claim for copyright infringement, Remark must allege that (1) it owns the copyrighted creation, and (2) that Adell copied constituent elements of the work that are original.   See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see also, Kohus v. Mariol, 328 F. 3d 848, 853 (6th Cir. 2003).

A plaintiff may establish "an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." Kohus, 328 F. 3d at 854.   "Access is proven when the plaintiff shows that the defendant had an opportunity to view or copy plaintiff's work." Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp., 361 F. 3d 312, 316 (6th Cir. 2004).   Substantial similarity is a two step test. Kohus, 328 F. 3d at 855.   The first step requires identifying

---

[2] Adell also raises issues concerning proof of ownership, claiming that prior to the Copyright Act of 1976, the owner of a copyright in a work was the publisher and not the author, and that the assignment of the copyright to Remark appears to have been made from Chuck Blore & Don Richman, Inc. to Celestial Mechanix, Inc. rather than to Remark.  These are issues that are not properly the subject of a motion to dismiss, which tests whether the plaintiff has stated a claim for relief, not whether the plaintiff can prove it is entitled to relief, a question properly brought under a Rule 56 motion for summary judgment.  Therefore, the court declines to address these arguments at this stage of the proceedings.

which aspects of the artist's work are protectible, or those independently created by the author.  Id.  The second step determines whether the allegedly infringing work is substantially similar to the protectible elements of the original.  Id. at 856.  This determination should be made based on the judgment of an ordinary reasonable person.  Id.

Remark argues that it can enforce all of the copyrights in both the unregistered original work and the registered, derivative work of the WLUP commercial bearing United States registration number PA 64-936.  In Murray Hill, the plaintiff registered an original work but was pursuing a copyright infringement claim based on the derivative, unregistered work.  Murray Hill, 264 F. 3d at 629-30.  The Murray Hill court concluded that the plaintiff could not assert a claim of copyright infringement on the derivative work because it was not registered with the United States Copyright Office.  Id. at 630.  Here, the Remarkable Mouth registration is a derivative work adding "some film footage and changed narration," to preexisting "film footage."  Therefore, Remark is correct that it can enforce all of its copyrights in both the original and the registered derivative work.  Id. ("Because a derivative work is cumulative of the earlier work, it is logical that the registration of the derivative work would relate back to include the original work, while registration of the original matter would not carry forward to new, derivative material.")

Adell's argument that Remark has failed to "identify any original content of any work in its pleading" is incorrect.  See Adell's Reply Br. at 2 (emphasis in original).  Specifically, Remark alleges that the original content in the WLUP registered derivative work includes:

> a body shot of an attractive woman wearing a tank top or T-shirt bearing a
> station logo; the woman speaks directly into the camera, in her own voice, to
> introduce the name of the station being promoted; the camera zooms into a

closer shot of the woman's face, with emphasis on her mouth; the woman's voice changes to one not her own as she lip synchs to promote the broadcasting content of the subject station by repeating short segments of content familiar to that subject station; the camera withdraws back to a broader shot of the woman; a male voice over from off camera speaks to the woman "you have a remarkable mouth;" the woman responds, in her own voice, that the subject station is a remarkable station; camera again zooms in to focus on the woman's face where she again lip synchs a final short segment of the subject station's content followed by the subject station's logo or other branding.

Am. Compl., ¶¶ 8-9.  Additionally, Remark has alleged ownership of the WLUP Remarkable Mouth commercial:

The copyrights in the Remarkable Mouth commercials were registered with the United States Copyright Office on April 11, 1980 and bears U.S. Reg No. PA 64-936 (the "Registration").  The Remarkable Mouth Registration was assigned to Remark on August 12, 2002 and the assignment was recorded in the US Copyright Office on November 6, 2002.

Am. Compl., ¶16.   Remark also alleges copying of the registered, derivative work–established by (1)  access and opportunity to view the copyrighted work and (2) substantial similarity.  See Am. Compl. at ¶¶11, 13-15, 17, 27-31("Defendant had access to the Remarkable Mouth commercials through the Internet, broadcasts . . ."); see also, Am. Compl. at ¶¶8-10, 21, 23-24, 26, 32-34 ("The expressive elements of the WADL commercials are substantially similar . . . to the expressive/copyrightable elements . . .of the Registration.")

However, Remark claims to be the "owner by assignment of a collection of commercials known as the 'Remarkable Mouth' [] commercials . . . [and] the development, promotion and advertising of the Remarkable Mouth commercials occurred before and after 2002 by Remark." Am. Compl., ¶ 6.  Remark does not address the fact that it cannot claim copyright protection for the unregistered commercials produced after the 1980, registered,

-10-

derivative work because these commercials are derivative works of the registered commercial. See Murray Hill, 264 F. 3d at 632 ("[W]e therefore adopt the rule that a copyright owner must register its derivative works with the United States Copyright Office as a jurisdictional prerequisite to bringing a copyright infringement claim.").  To the extent Remark bases its copyright infringement claim on commercials developed subsequent to the creation of the WLUP Remarkable Mouth commercial, registration number PA 64-936, this portion of its claim may not proceed as these commercials are unregistered.  Adell's motion to dismiss Remark's copyright infringement claim is denied.

iii.    Count II: Trademark Infringement

Adell argues that Remark's trademark claim is a camouflaged copyright infringement claim and should be dismissed.  "The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'"  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28-29 (2003).  The Lanham Act creates a cause of action against "any person who. . . uses in commerce . . . any false designation of origin . . . which is likely to cause confusion, or cause mistake, or to deceive as to . . . the origin [] of [] goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1)(A).

Remark argues that all of the commercials have the same distinctive features which have become associated with Remark as the sole source of these commercials and Adell deceives the public when it uses the distinctive elements in its WADL commercials.  The Dastar court has squarely rejected the argument advanced by Remark and its theory of recovery is not actionable under the Lanham Act.

In sum, []the phrase 'origin of goods' in the Lanham Act [] refers to the

-11-

> producer of the tangible goods that are offered for sale, and not to the author
> of any idea, concept, or communication embodied in those goods. Cf. 17
> U.S.C. § 202 (distinguishing between a copyrighted work and "any material
> object in which the work is embodied"). To hold otherwise would be akin to
> finding that § 43(a) created a species of perpetual patent and copyright,
> which Congress may not do.

Id. at 37. Specifically, the Dastar court concluded that § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), was inapplicable to the facts of the case wherein the defendant was alleged to have taken video content from an old television series, made alterations to it, and published a new video under its own name. Id. In so concluding, the Dastar court distinguished the case before it with a hypothetical situation where the defendant "bought some of [the plaintiff's] videotapes and merely repackaged them as its own." Id. at 31. Therefore, "taking tangible goods and reselling them as your own constitutes a Lanham Act violation; taking the intellectual property contained in those goods and incorporating it into your own goods does not." Nat'l Bus. Dev. Servs. v. Am. Credit Educ. & Consulting Inc., 299 F. App'x 509, 511 (6th Cir. 2008); see also, Romero v. Buhimschi, 396 F. App'x 224, 232 (6th Cir. 2010).

In Nat'l Bus. Dev. Serv., the Sixth Circuit Court of Appeals affirmed the district court's dismissal of the plaintiff's Lanham Act claim, noting that "[t]he district court accurately applied the holding of Dastar[:]"

> Plaintiff has not accused Defendants of taking Plaintiff's physical materials,
> repackaging them, and selling them under Defendants' name. Rather,
> Plaintiff has accused Defendants of incorporating Plaintiff's copyrighted
> materials into Defendants' materials. As the Fifth circuit held in Lee, this type
> of claim is governed by copyright law, not the Lanham Act. Therefore,
> Plaintiff has failed to plead a cause of action under the Lanham Act.

Id. (citing Nat.'l Bus. Dev. Serv. v. Am. Credit Educ. & Consulting Inc., 2007 U.S. Dist. LEXIS 37369, at *9-10 (E.D. Mich. May 23, 2007)). Similarly, Remark has not accused

Adell of taking Remark's Remarkable Mouth commercials, repackaging them and selling them under Adell's name.  Remark claims that Adell has incorporated copyrighted and distinctive features contained in the Remarkable Mouth commercials into the WADL commercials such that WADL commercials falsely suggest that Remark is the source of the WADL commercials.  <u>See</u> First Am. Compl., ¶¶ 45-52.  Such allegations are barred by the holding in <u>Dastar</u>.

The cases relied upon by Remark in support of its argument that it has stated an actionable claim under the Lanham Act fall outside the scope of <u>Dastar</u> because the defendants in each case had taken the plaintiffs' products, repackaged them and sold them as their own.  <u>See Johnson</u> v. <u>Jones,</u> 149 F. 3d 494, 503 (6th Cir. 1998) (defendant represented copyrighted architectural plans as his own work); <u>see also</u>, <u>Studio A Entertainment, Inc. v. Action DVD</u>, 658 F. Supp. 2d 851, 853-54 (N.D. Ohio  2009) (summary judgment on plaintiff's trademark and copyright infringement claims when the defendant purchased and resold unauthorized or "bootleg" copies of plaintiff's DVDs).  Remark's trademark infringement claim is therefore dismissed.

B.   <u>Remark's Partial Motion for Summary Judgment</u>

Remark argues that the parties entered into a settlement agreement regarding Remark's copyright and trademark infringement claims, and Adell breached the parties' agreement by failing to perform under the agreement.  Remark maintains that Adell's revisions to Remark's original settlement proposal, sent via email on December 11, 2009, was Adell's counteroffer.  Remark further maintains that it accepted Adell's counteroffer on December 14, 2009 when it sent a response to Adell's December 11, 2009 email, "[w]e've reviewed your proposed revisions. . . we will agree to all of your proposed changes."

-13-

Remark further argues that the agreement was based on valid consideration and the parties had a meeting of the minds on the material terms of the settlement agreement, specifically Adell agreed to pay $50,000.00 to Remark, and to cease use or displays of the commercials by Adell and mutual release of all and any claims.

Adell argues that there is no enforceable settlement agreement between the parties because (1) Adell 's December 11, 2009 email was not an offer; and (2) the parties intended execution of a written agreement, however Adell never signed Remark's tender of the proposed agreement.  Adell points to the language of the draft agreement, which states that:

> This Settlement Agreement and Mutual Release ("Agreement") is entered into by and between Celestial Mechanix, Inc. d/b/a CMI Films Inc. ("CMI") and Remark, LLC ("Remark"), on the one hand, and WADL-TV ("WADL"), on the other hand, and shall become effective as of the date the parties sign the agreement.

> *                              *                              *

> 1.      WADL shall pay CMI the sum of $50,000 in full settlement of CMI and Remark's alleged claims by certified check or wire transfer (at CMI's election) within 7 business days after the execution of this Agreement.

> *                              *                              *

> 11.    The execution of this Agreement and the performance of the obligations specified herein effect the settlement of claims set forth herein which are contested and denied.  Nothing contained herein shall be construed as an admission by any party of any liability of any kind to any other party.  Each party expressly denies that such party is any way liable, indebted or obligated to any other party.

> 12.    This Agreement constitutes and contains the entire agreement and understanding concerning the subject matter hereof between the Parties, and supersedes and replaces all prior negotiations, proposed amendments or agreements, written or oral.  The Parties hereto acknowledge, one to the other, that no other party nor any agent or attorney of any other party, has made any promise, representation or warranty not contained herein

-14-

concerning the subject matter hereof to induce the Parties hereto to execute this Agreement, and they further acknowledge that they have not executed this Agreement in reliance on any such promise, representation or warranty not contained herein.

See Plf's Mot. for Summ. J., Ex. C at preamble, ¶¶1, 11-12.

<u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also, Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

-15-

judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original); see also, National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also, McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

"Settlement agreements are a type of contract and are therefore governed by contract law." Bamerilease Capital Corp. v. Nearburg, 958 F. 2d 150, 152 (6th Cir. 1992). Therefore, "whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." Id. Before a contract can be completed, there must be an offer, acceptance, consideration and a meeting of the minds on all essential terms. Kloian v. Dominos Pizza, LLC, 273 Mich. App. 449, 453 (2006).

An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Id. "An acceptance sufficient to create a contract arises where the individual

-16-

to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." Id. at 453-54. "Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." Id. at 452-53. "Consideration is [] a bargained-for exchange involving a benefit on one side, or a detriment suffered, or service done on the other." Prentis Family Found, Inc. v. Barbara Ann Karmanos Cancer Inst., 266 Mich. App. 39, 52-53; 698 N.W.2d 900 (2005). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." Kloian, 273 Mich. App. at 454.

In Kloian, the court found that the parties had reached an enforceable settlement agreement. Id. at 454. The plaintiff-lessor brought suit against the defendant-lessee claiming that the defendant breached the parties agreement by failing to pay rent, taxes, insurance and other damages. Id. at 450. Prior to trial, the parties engaged in settlement discussions. Id. at 451. On March 18, 2005, the plaintiff's counsel sent an email to defendant's counsel that "I confirmed with Mr. Kloian that he will accept the payment of $48,000 in exchange for dismissal with prejudice of all claims and a release of all possible claims." Id. The court found that this constituted an offer on behalf of the plaintiff. Id. The court further concluded that the defendant's attorney's response was an acceptance of the plaintiff's offer. The defendant's attorney sent an email stating:

> Domino's accepts your settlement offer contained in the message below. I spoke with the court, advised it of the settlement and confirmed that we need not appear in court in connection with the settlement. I have ordered a settlement draft from domino's in the amount of $48,000, made payable jointly to Mr. Kloian and your firm. I will forward a stipulation and order for dismissal with prejudice and a release for approval by you and Mr. Kloian respectively. You should have them in the next few days. Please call with

-17-

any questions. I'm pleased we were able to resolve this matter without trial.

Id. at 453.   The court also held that "[t]here clearly was a meeting of the minds on the essential terms of the agreement.  The essential terms were the payment of $48,000 by defendant in exchange for a dismissal with prejudice and release."  Id. at 454.

Adell argues that it did not make an offer to Remark because formation of the contract required further assent of Adell, specifically its signature to the proposed settlement agreement.  Adell relies on the case of Lakes States Engineering Corp. v. Lawrence Seaway Corp., 15 Mich. App. 637, 643 n.1 (1969) in support of its argument. In Lakes States, the defendant Michigan corporation tendered an unsigned contract to the plaintiff foreign corporation for construction of caissons for the Jeffersonian Apartments in the City of Detroit.  Id. at 642.  The plaintiff signed the contract in Chicago, Illinois and returned it to the defendant and defendant signed the contract in Detroit, Michigan.  Id.  The defendant argued that the contract became effective when it was signed in Detroit, Michigan, while the plaintiff argued that the contract became binding when signed in Chicago, Illinois.  Id.  The court held that the plaintiff could not maintain an action against the defendant because it is unlawful for an unqualified corporation to carry on business in the State of Michigan under Michigan law.  Id. at 645-46.

In reaching this conclusion however, the court did not resolve the question of when the contract became binding, when signed by the defendant in Chicago, Illinois or when signed by plaintiff in Detroit, Michigan.  Id.  The court noted only that "[t]he question of when and where the parties became contractually bound depends on their intention as manifested by their verbal statements and conduct in the light of all the circumstances."

-18-

Id. at 642 (citing Restatement of the Law, Contracts, § 25 at 31, "[i]f from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a further expression of assent, he has not made an offer.")   Thus, Lakes States does not support Adell's argument that the December 11, 2009 email was not an offer by Adell:

> Larry,
>
> Attached is a redline version of our proposed revisions to the settlement agreement between CMI Films and WADL.  Please contact me to discuss at your convenience.
>
> Thanks,
>
> Robin Asher

This was Adell's manifestation of its willingness to enter into a bargain, so that Remark was justified in understanding its assent would conclude the parties' agreement.  See Kloian, 273 Mich. App. at 453.  Thereafter, on December 14, 2009, counsel for Remark accepted Adell's offer:

> We've reviewed your proposed revisions.  Because we'd like to get this wrapped up, we will agree to all of your proposed changes.  Please incorporate them into a final version for execution.  As a reminder, payment is due to CMI within 7 business days of execution.  I will follow up with method and address, etc.  Thank you.

Remark's acceptance of Adell's "red line version" binds both parties to the agreement. Even if this December 14, 2009 email is viewed as an offer rather than an acceptance of the agreement, the response by Adell leaves no doubt about Adell's own assent to the settlement agreement.  Adell's counsel prepared the agreement with the revisions included

and on December 22, 2009 sent it with the following email:

> Attached is a Final Version of the CMI v WADL Settlement Agreement. Please have your clients execute the agreement and return 2 originals to me for execution by WADL. Once the Agreement has been fully executed, we will return one of the fully executed Agreements and arrange for payment of the settlement.

This communication of Adell's agreement is unambiguous and unequivocal. No claim or argument has been advanced by Adell to challenge the authority or power of its attorney to contractually bind it to the settlement.

Further, an objective view off the evidence shows that the parties had a meeting of the minds on the material terms of the settlement agreement, which included: (1) the payment of $50,000.00 to Remark, (2) no further use or displays of the WADL commercial, and (3) release of liability. Id. at 454. Here, Remark accepted Adell's "redline version" of the settlement agreement, communicated this to Adell and requested that Adell "incorporate these revisions into a final version for execution."

Adell's defense that the agreement was not enforceable until Adell signed it is without merit because the language: "[E]ffective as of the date the parties sign the Agreement[,]," is not a material term of the parties agreement. Adell's reliance on Angelo DiPonio Equipment Co. v. State of Michigan, 107 Mich. App. 756; 309 N.W. 2d 566 (1981) is unavailing. In DiPonio, the court held that the defendants had not made an offer to contract because the unsigned contractual documents were sent to the plaintiff along with a cover letter "indicat[ing] that execution of the contract forms by plaintiffs did not constitute an award of the contract." Id. at 566. Here, there is no indication from the email correspondence between the parties suggesting that "effective as of the date the parties

-20-

sign the agreement" was a material term of the agreement or that the agreement would not be enforceable until signed by Adell.  In light of the circumstances at the time, the parties became contractually bound on December 14, 2009.  Adell has failed to provide any evidence that its offer was not an expression of its fixed purpose until Adell gave further assent to the agreement.  See Lakes States, 15 Mich. App. at 642.  Indeed, in the context of the exchange of settlement terms, it is clear that the "effective date" was merely intended to start the clock on seven days for payment of the settlement.

Adell argues that none of the cases relied upon by plaintiff involve circumstances wherein a settlement agreement was reached prior to litigation, all involve post-suit settlement agreements.  However, defendant does not indicate why this factual difference affects the outcome of this matter.  Defendant relies on Limbright v. Hofmeister, 553 F. Supp. 2d 886, 893 (E.D. Mich. 2008), however this case does not support Adell's argument.  Limbright merely follows the law in the Sixth Circuit Court of Appeals applying Kokkonen v. Guardian Life Ins., 511 U.S. 375 (1994) to a district court's authority to retain jurisdiction over an action dismissed after the parties enter into a settlement agreement. Id.  Specifically, Limbright notes that district courts may retain jurisdiction to enforce a settlement agreement when the parties agree to either (1) include the settlement agreement within the dismissal order or (2) include language indicating that the court retains jurisdiction over the settlement agreement within the dismissal order.  Id.  Therefore, to the extent Adell argues that Limbright somehow precludes this court's enforcement of a contractual agreement to settle, such an argument is without merit because Limbright does not hold that this court lacks the authority to enforce the parties' settlement agreement because it was entered into prior to Remark filing this action.  In any event, it would be

-21-

inadvisable for the court to decline to enforce the parties' settlement agreement because it was entered into prior to filing the present action as public policy favors the settlement of disputes without litigation.  See Aro Corp. v. Allied Witan Co., 531 F. 2d 1368 (6th Cir. 1976).

Adell has provided the court with no authority for its argument that the settlement agreement is unenforceable because Adell failed to sign the agreement. As discussed above, the "effective as of the date the parties sign the agreement" was not a material term of the agreement, and in any event, the parties have an enforceable oral settlement agreement because there is no requirement that a settlement agreement be reduced to a writing to be enforceable.  See Kukla v. National Distillers Products Co., 483 F. 2d 619, 621 (6th Cir. 1973) (applying Michigan law) (observing that the district court may enforce a settlement agreement even where the agreement has not been reduced to a writing nor arrived at in the presence of the court); see also, Re/Max Int'l v. Realty One, Inc., 271 F. 3d 633, 645 (6th Cir. 2001) (applying Ohio law) ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement.  When parties have agreed on the essential terms of the settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement.").  In Scholnick's Importers-Clothiers, Inc. v. Lent, 130 Mich. App. 104; 343 N.W. 2d 249 (1983), the Michigan Court of Appeals stated:

> It is clearly possible for parties to make an enforceable contract which binds them to execute a subsequent written agreement.  However, where agreement has been expressed on all the essential terms of the contract, the mere fact that the parties manifest an intention to prepare a written memorial of their agreement does not render the oral contract unenforceable merely because the writing is never prepared.  On the other hand, if the written document is to contain any material term upon which agreement has not

already been reached, there is no binding contract.

*Id.* at 253.

The court finds that the parties' settlement agreement is enforceable, that it was based on an offer, an acceptance, a meeting of the minds on all material terms  and valid consideration of $50,000 plus no further use of the allegedly infringing WADL commercials in exchange for a release of all claims.

Finally, Remark asks that it be awarded attorneys' fees because Adell has acted in bad faith in refusing to perform under the parties' agreement.  Remark relies on Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975) and Bamerilease Capital, 958 F. 2d at 154 in support of its argument.  However, Adell has not addressed Remark's arguments in its responsive brief.  Therefore, the court will entertain further briefing on this issue and reserves ruling on this request until review of the parties' supplemental briefing.


## V.  CONCLUSION

Adell's motion to dismiss [#22] is GRANTED IN PART and DENIED IN PART.

Count II of the first amended complaint is dismissed.

Remark's motion for summary judgment [#26] is GRANTED.

Adell shall file a brief in response to Remark's request for attorneys' fees within fourteen (14)  days from the date of this order.  Remark shall file a reply brief in support of its request for attorneys' fees within seven (7) days from its receipt of Adell's brief in response.

-23-

SO ORDERED.

Dated:  September 20, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 20, 2011, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk